## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

EMILIA N.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

Civil No. 21-18677 (RMB)

OPINION

**APPEARANCES**

Alan H. Polonsky
Polonsky and Polonsky
512 S. White Horse Pike
Audubon, New Jersey 08106

    *On behalf of Plaintiff*

Patricia Anne Stewart
Social Security Administration
Office of the General Counsel
300 Spring Garden Street, 6th Floor
Philadelphia, Pennsylvania 19123

    *On behalf of Defendant*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon an appeal filed by Plaintiff Emilia N.

("**Plaintiff**") seeking judicial review of a final determination of the Commissioner of

the Social Security Administration (the "**Commissioner**" and the "**SSA**,"

respectively), which denied Plaintiff's application for Social Security Disability Insurance benefits. For the reasons set forth herein, the Court will **AFFIRM** the decision of the Administrative Law Judge ("**ALJ**").

## I.      PROCEDURAL HISTORY

On July 30, 2014, Plaintiff protectively filed an application for Social Security benefits under Title II and Title XVI of the Social Security Act (the "**Act**"), alleging an onset date of disability beginning July 23, 2012. [Case No. 21-18677 ("*Emilia II*"), Docket No. 4 (Administrative Record ("**R.**")), at 10.] Plaintiff later amended the alleged onset date to January 24, 2014. [R. at 10.] The claims were first denied on January 17, 2015, and again denied upon reconsideration on July 2, 2015. [R. at 10.] On August 4, 2015, Plaintiff filed a written request for a hearing before an ALJ. [R. at 10.] That hearing took place on October 26, 2017, in Pennsauken, New Jersey before ALJ Karen Shelton. [R. at 10.] Plaintiff was represented by Alan Polonsky, Esq. at the hearing, at which ALJ Shelton heard testimony from Plaintiff and Gary A. Young, an impartial vocational expert ("**VE**"). [R. at 10.]

On February 26, 2018, ALJ Shelton issued a decision denying Plaintiff's claims for benefits. [R. at 7–26.] Plaintiff requested Appeals Council review of that decision on April 18, 2018. [R. at 223–26.] That request was denied by the Appeals Council on December 17, 2018, [R. at 1–6], rendering ALJ Shelton's decision final.

Thereafter, Plaintiff sought this Court's review pursuant to 42 U.S.C. § 405(g). *Emilia N. v. Comm'r of Soc. Sec.*, No. 19-00919 (D.N.J. filed Jan. 22, 2019)

2

(hereinafter, "*Emilia I*"). Several months later, Chief Judge Wolfson stayed *Emilia I* and other similar cases pending resolution of *Bizarre v. Berryhill*, No. 19-01773 (3d Cir.) and *Cirko v. Berryhill*, No. 19-01772 (3d Cir.), both of which raised constitutional questions regarding the authority of SSA ALJs in light of the U.S. Supreme Court's decision in *Lucia v. SEC*, 138 S.Ct. 2044 (2018). [*See Emilia I*, Docket No. 11.] Following resolution of *Bizarre* and *Cirko*, Chief Judge Wolfson lifted the administrative stay of *Emilia I* on May 1, 2020. [*Emilia I*, Docket No. 15.] On May 10, 2020, Plaintiff filed a request to remand *Emilia I* given the outcome of *Bizarre* and *Cirko*, and the Commissioner consented. [*Emilia I*, Docket Nos. 16, 19.] On October 9, 2020, this Court remanded *Emilia I* for further administrative action. [*Emilia I*, Docket No. 20; *see also* R. at 1210–11.]

On January 29, 2021, the Appeals Council issued a Remand Order with instructions given the outcome of *Cirko v. Comm'r of Soc. Sec*, 948 F.3d 148 (3d Cir. 2020). [R. at 1204–1209.] Though the remand originated on the basis of the constitutional issues raised by *Cirko*, the Appeals Council also vacated ALJ Shelton's decision and remanded the case to address two other issues: (1) that ALJ Shelton's decision did not contain an adequate evaluation of Plaintiff's use of an assistive device (*i.e.*, a cane); and (2) that the conclusions reached regarding Plaintiff's residual functional capacity were not adequately explained. [R. at 1206–07.] Additionally, the Appeals Council consolidated this matter with a new claim for benefits under Title II and Title XVI of the Act that Plaintiff filed on January 14, 2019. [R. at 1207.]

The consolidated matter was then assigned to ALJ Jennifer Pustizzi, who held

a hearing on February 2, 2021 by telephone and heard testimony from Dr. Stephanie

Lusk, a VE. [R. at 1135–1177.] Mr. Polonsky again represented Plaintiff at the

hearing. [R. at 1109.] On August 12, 2021, ALJ Pustizzi issued a partially favorable

decision on Plaintiff's claims for benefits. [R. at 1105–34.] Because Plaintiff's age

category under applicable rules changed on January 19, 2021 from a "younger

individual age 45–49" to an individual approaching an "advanced age," ALJ

Pustizzi found that Plaintiff *was disabled* under Title XVI of the Act as of January 19,

2021 and was thus eligible for Supplemental Security Income but concluded that

Plaintiff was *not disabled* under Title II of the Act on or before December 31, 2019,

the date she was last insured for Social Security Disability Insurance benefits, and

was thus not eligible for such benefits. [R. 1119–21.]

Plaintiff chose not to file a Request for Reconsideration, and the Appeals

Council did not review the matter on its own accord within 60 days following the

date of ALJ Pustizzi's decision.  [*Emilia II*, Docket No. 11, at 1.]  Accordingly, the

decision became "final," and Plaintiff filed the instant action seeking this Court's

review pursuant to 42 U.S.C. § 405(g). [*Emilia II*, Docket No. 1.] On appeal, Plaintiff

asks this Court to focus on whether ALJ Pustizzi erred in finding that Plaintiff was

not disabled under Title II of the Act. [*Emilia II*, Pl.'s Br., Docket No. 7, at 6.]

## II.    STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a

court must uphold the ALJ's factual decisions if they are supported by "substantial

evidence." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Hess*, 931 F.3d at 208 n.10 (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)).

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for

evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i–v). The

claimant bears the burden of proof at steps one through four, whereas the

Commissioner bears the burden of proof at step five. *Hess*, 931 F.3d at 201. Recently,

the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step

of the analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

> At step four, the ALJ assesses the claimant's "residual functional capacity" ("**RFC**") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

## III.    FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was born on January 20, 1971, was 43 years old on the amended alleged onset date. [*See* R. at 1119.] Plaintiff met the insured status requirements of the Act through December 31, 2019, meaning that she must establish disability on or before that date to be entitled to benefits. [R. at 1109–12.] In her decision, ALJ Pustizzi adopted the below findings in support of her conclusion that Plaintiff was not disabled under Title II of the Act on or before December 31, 2019.

At step one, ALJ Pustizzi found that Plaintiff had not engaged in substantial gainful activity during the relevant period of February 10, 2014 through December 31, 2019. [R. at 1112.]

At step two, ALJ Pustizzi found that Plaintiff suffered from the following severe impairments: "Dysfunction of major joints, status-post left knee arthroscopy, obesity, depressive disorder, [and] affective disorder." [R. at 1112.]

At step three, ALJ Pustizzi then found that "[Plaintiff] did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." [R. at 1113–15.]

At step four, ALJ Pustizzi found that, during the relevant period, Plaintiff had the RFC:

> to perform work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] can handle, finger, and feel bilaterally, frequently; she can climb ramps and stairs occasionally but can never climb ladders, ropes or scaffolds, [Plaintiff] can stoop, kneel, and/or crouch occasionally. [Plaintiff] can never crawl, never work at unprotected heights and/or never work with hazardous machinery. [Plaintiff] can perform simple routine tasks and can make simple work-related decisions.

[R. at 1115.] Further, ALJ Pustizzi found that Plaintiff "has been unable to perform any past relevant work." [R. at 1119.]

At step five, ALJ Pustizzi found that, prior to January 19, 2021, "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." [R. at 1120.] Specifically, ALJ Pustizzi adopted VE Lusk's testimony that Plaintiff could have performed the following occupations based on data available from the Dictionary of Occupational Titles ("**DOT**") and other supplemental sources: "Type copy [examiner] (DOT# 979.687-026)"; "Addresser (DOT# 209.587-010)"; and "Loader (DOT# 726.687-030)." [R. at 1120.] Accordingly, ALJ Pustizzi concluded that, prior to January 19, 2021, Plaintiff could

have successfully adjusted to these other positions and "a finding of 'not disabled' is therefore appropriate." [R. at 1120–21.]

## IV.    DISCUSSION

Plaintiff raises two arguments in support of—what the Court understands to be—remanding this case for further reconsideration. First, she argues that ALJ Pustizzi's "finding as to [Plaintiff's] residual functional capacity was not supported by substantial evidence." [*Emilia II*, Pl.'s Br., Docket No. 7, at 26–31.] Second, she argues that ALJ Pustizzi's "decision that [Plaintiff] could engage in alternative work activity was not supported by substantial evidence." [*Id.* at 31–36.] Defendant opposes for the reasons described below. [*Emilia II*, Def.'s Br., Docket No. 8, at 8–11.] The Court will address both arguments in turn.

### A.    The RFC Determination.

Plaintiff first argues that ALJ Pustizzi's determination regarding Plaintiff's RFC was not supported by substantial evidence because ALJ Pustizzi allegedly did not consider and address medical opinions of Dr. Mirela Draganescu dated May 25, 2017, August 2019, and June 29, 2020. [*Id.* at 27–29.] Additionally, Plaintiff asserts that ALJ Pustizzi did not adequately explain why she gave those opinions little weight, principally because she did not describe how the opinions are inconsistent with each other. [*Id.* at 29.] In response, Defendant explains that ALJ Pustizzi cited each of the referenced opinions in her discussion and provided three adequate reasons for discounting them. [*Emilia II*, Def.'s Br., Docket No. 8, at 9.] Thus,

Defendant argues that ALJ Pustizzi's RFC determination is supported by substantial evidence. [*Id.*]

A claimant's RFC is the most she can do despite her functional limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Tedesco v. Comm'r of Soc. Sec.*, 833 F. App'x 957, 960 (3d Cir. 2020) (quoting *Chandler*, 667 F.3d at 361). In discussing a claimant's RFC, the ALJ may reject or discount pertinent evidence, such as a treating physician's medical opinions, *see Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008) (citation omitted); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), but the ALJ must give "some indication" of the evidence that she rejects and her "reason(s) for discounting such evidence," *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). In her opinion, the ALJ does not have to discuss "every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (explaining that while the ALJ must consider and evaluate all relevant evidence, the ALJ need not *discuss* all relevant evidence). The touchstone is whether the reviewing court has sufficient information to understand the ALJ's basis for rejection. *See Johnson*, 529 F.3d at 204 (quoting *Burnett*, 220 F.3d at 121).

Here, Plaintiff's arguments are unavailing. ALJ Pustizzi *did* consider and evaluate each of the medical opinions that Plaintiff contends were omitted from her

decision. The Court restates ALJ Pustizzi's discussion of Dr. Draganescu's medical

opinions verbatim:

> Dr. Draganescu submitted a number of medical source statements with varying opinions that were somewhat inconsistent with each other. A May 2019 [sic] report indicated claimant had mental limitations in concentration and travel that would preclude work up to five percent of an eight-hour work day. (Ex. 21F). An August 2019 medical report indicated claimant would be unable to lift/carry more than five pounds, could stand/walk less than two hours per day, sit less than six hours per day, would have limits pushing/pulling with hand and foot but have no limits handling objects, hearing, speaking and travelling. (Ex. 48F). A June 29, 2020 report noted claimant's mental restrictions were largely mild. (Ex. 51F). Given the inconsistencies in these reports as well as the fact that Dr. Dragenescu [sic] is claimant's primary care physician and not a psychiatrist or therapist that would be experienced in the scope of expertise necessary to issue an opinion regarding claimant's mental health limitations, these reports are given little weight. The undersigned also notes that these reports do not correspond to the specific function-by-function analysis required by Social Security in making disability determinations.

[R. at 1119.] Indeed, ALJ Pustizzi specifically cited all three medical reports—Exs.

21F (May 25, 2017),[1] 48F (August 2019), and 51F (June 29, 2020). [*Id.*] When

discounting relevant evidence of a treating physician, the ALJ need not restate each

opinion in detail. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining

that the ALJ is not required to follow a specific format or use particular language in

conducting her analysis); *Barnhart*, 94 F. App'x at 133 (noting that the ALJ need not

discuss "every tidbit of evidence"). Instead, the ALJ must give "some indication" of

the evidence she rejects and her reason for doing so. *Burnett*, 220 F.3d at 121. By

commenting on each opinion specifically, the ALJ clearly satisfied her principal

---

[1]ALJ Pustizzi's decision incorrectly refers to medical opinion 21F as dated "May 2019," instead of May 25, 2017. [*Compare* R. at 1119, *with* R. at 612–16.]

obligation. *See id.* Plaintiff has not supplied a convincing reason for this Court to rule otherwise.

Moreover, ALJ Pustizzi provided three discernable explanations why Dr. Draganescu's medical opinions were entitled to little weight. First, ALJ Pustizzi explained that they were internally inconsistent, which she illustrated by describing each opinion in general. [R. at 1119.] She also reproduced Dr. Draganescu's treatment notes and medical conclusions at other points in her opinion too, which further bolsters the proposition. [*See, e.g.*, R. at 1117 ("A separate encounter during [February 2019] with Dr. Draganescu showed moderately reduced range of motion in the lumbar spine but no other abnormalities."); R. at 1118 ("Claimant walked with a cane during a February 2020 encounter but later in July 2020, Dr. Draganescu documented claimant denying muscle pain, weakness or joint swelling and claimant was able to stand without difficulty and walk without assistance.").] Second, she explained that Dr. Draganescu's medical opinions—which addressed Plaintiff's mental health limitations—went beyond Dr. Draganescu's area of expertise, as she is a primary care physician and not a psychiatrist or therapist. [R. at 1119.] Third, she noted that Dr. Draganescu did not provide a function-by-function analysis, as required under applicable rules. [R. at 1119.]

Notwithstanding Plaintiff's overstated claim that "no explanation" was provided, [*Emilia II*, Pl.'s Br., Docket No. 7, at 29], the Court can clearly discern ALJ Pustizzi's basis for discounting Dr. Draganescu's medical opinions. *See Burnett*, 220 F.3d at 121 (stating that the reviewing court must be able to understand whether

probative evidence was either not credited or simply ignored) (quoting *Cotter*, 642 F.2d at 705). Accordingly, Plaintiff's argument that ALJ Pustizzi's RFC determination was not supported by substantial evidence fails. *See id.*

Additionally, the Court agrees with Defendant's alternative assertion that, even if ALJ Pustizzi's discussion of Dr. Draganescu's medical opinions were lacking in sufficient detail regarding Plaintiff's alleged physical limitations—which the Court does not find—ALJ Pustizzi's rationale for according such opinions little weight is nevertheless supported by substantial evidence elsewhere in the record that would preclude a remand. [*Emilia II*, Def.'s Br., Docket No. 8, at 9.] For instance, there are several references in ALJ Pustizzi's decision identifying inconsistencies between the treatment notes and medical opinions of Dr. Draganescu. [*See, e.g.*, R. at 1117, 1118.] Most notably, Dr. Draganescu documented that Plaintiff was able to stand without difficulty and walk without assistance in July 2020. [R. at 1118.] This is in contrast to her June 29, 2020 medical opinion that Plaintiff could sit, stand, or walk for zero hours during an eight-hour workday. [R. at 2428.] That Defendant did not call out these record observations in its brief does not require remand, as Plaintiff claims. [*Emilia II*, Pl.'s Reply Br., Docket No. 9, at 6.] They are described in ALJ Pustizzi's decision and hardly constitute a "post-hoc rationalization."

Furthermore, the transcript from ALJ Pustizzi's February 2, 2021 hearing as well as her hearing decision itself reveal a thorough evaluation of Plaintiff's claim that she relies on an assistive device for ambulation. [*See* R. at 1135–62 (inquiring into Plaintiff's dependence on a cane for ambulation); R. at 1113, 1116, 1117, &

1118 (noting Plaintiff's irregular use of a cane for support, at different points in time).] While ALJ Pustizzi could certainly have stated her analysis more explicitly that Plaintiff's RFC did not require an assistive device limitation, any shortcoming in this regard is harmless, as the record suggests that ALJ Pustizzi was keenly aware of Plaintiff's argument and closely evaluated the evidence, including Dr. Draganescu's inconsistent medical opinions.[2] [*See* R. at 1113, 1116–19]; *McGraw v. Comm'r of Soc. Sec.*, 609 F. App'x 113, 116 (holding that failure of ALJ to cite and discuss a relevant doctor's report, if error, would be harmless because ALJ had opportunity to consider content of report during hearing) (citing *Rutherford v. Barnhart*, 339 F.3d 546, 553 (3d Cir. 2005)). Accordingly, ALJ Pustizzi's RFC determination is supported by substantial evidence and does not require further reconsideration.

## B.     The Step Five Finding.

Plaintiff also argues that ALJ Pustizzi did not sustain her burden of establishing that Plaintiff could engage in other work. [*Emilia II*, Pl.'s Br., Docket No. 7, at 31–36.] Plaintiff first claims that, since Plaintiff's RFC is purportedly inaccurate, any determination as to alternative work activity is invalid because VE Lusk failed to consider all of Plaintiff's limitations. [*Id.* at 31.] Plaintiff contends a

---

[2] The Court is aware that the Appeals Council, in its Remand Order, directed ALJ Pustizzi to consider and specifically discuss in her decision whether Plaintiff's RFC required an assistive device limitation. [R. at 1206.] Neither party has discussed this narrower issue at any length. Because the Court finds that ALJ Pustizzi sufficiently evaluated Dr. Draganescu's medical opinions (and other evidence) and supplied adequate reasons for discounting such evidence, the Court concludes that any deficiency in ALJ Pustizzi's compliance with the Remand Order was harmless.

reversal is required as a result. [*Id.*] Not so. Because the Court concluded in Section

IV.A that Plaintiff's RFC is supported by substantial evidence and because the

argument depends on a conclusion that Plaintiff's RFC is inaccurate, the first

argument fails.[3] *See also Rutherford*, 399 F.3d at 554 (explaining that where a

limitation is supported by medical evidence but opposed by other evidence in the

record, the ALJ has discretion to exclude the limitation from her hypothetical).

Next, Plaintiff claims that ALJ Pustizzi erred in concluding that Plaintiff

could perform any of the alternative jobs VE Lusk identified in the numbers cited

because "there is no reasonable basis for those numbers." [*Emilia II*, Pl.'s Br., Docket

No. 7, at 31–32.] Informed by the DOT and supplemental sources, VE Lusk reported

that in the national economy there are approximately 25,000 type copy examiner

jobs, 15,000 addresser jobs, and 15,000 loader jobs. [R. at 1120.] However, during

the hearing, VE Lusk testified that the addresser position is "probably" obsolete, [R.

at 1170–71], and that a person who depends on a cane for ambulation may not be

capable of performing the loader job, [R. at 1165]. On cross-examination by Mr.

Polonsky, VE Lusk struggled to recall how she calculated the number of type copy

examiner jobs but stated that she reported an average using data from the DOT and

---

[3] But, even if Plaintiff's RFC were inaccurate for any of the reasons Plaintiff argues, ALJ Pustizzi nonetheless asked VE Lusk whether a hypothetical person in Plaintiff's circumstances who also uses a cane for ambulation and support could perform any of the three alternative jobs identified. [R. at 1165.] VE Lusk indicated that this hypothetical person *could* perform the jobs of type copy examiner and addresser, but not loader. [R. at 1165.] Thus, VE Lusk considered the physical limitation that Plaintiff contends was omitted from her analysis. Accordingly, any deficiency premised on this basis would be cured *ab initio*.

supplemental sources. [R. at 1168–70.] The same type of issue occurred for the other jobs, too. [*See* R. at 1169-70.] On the foregoing basis, Plaintiff argues that VE Lusk's testimony cannot serve as substantial evidence to show that Plaintiff could have engaged in alternative work. [*Emilia II*, Pl.'s Br., Docket No. 7, at 32–34.] In fact, Plaintiff's argument is broader: testimony from VEs is systematically flawed because all such experts rely on the DOT—an out-of-date publication—to generate inaccurate job availability data, which produces irrational ALJ conclusions. [*Id.* at 34.]

Defendant responds that all three alternative jobs survive Plaintiff's arguments. The loader job should not be excluded because Plaintiff's RFC does not include use of a cane. [*Emilia II*, Def.'s Br., Docket No. 8, at 10.] The addresser job should not be discounted because it is based on data from the DOT, an authorized source. [*Id.* at 10–11.] And, even if Plaintiff's challenge to VE Lusk's method for calculating the number of available jobs were correct, the supplemental sources Plaintiff approves of all yield sufficiently numerous availability data to preclude a reversal. [*Id.* at 11.]

At step five of the sequential evaluation process, the ALJ must establish that the claimant can perform "other work," which the ALJ does by showing that there are available jobs existing in substantial numbers in the national economy that the claimant can perform. *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560). Even if the ALJ erred as to some jobs, the court may affirm so long as one viable job remains available in significant numbers. *See, e.g.*, *Reed v. Comm'r of Soc. Sec.*, 2018 WL 5617549, at *6 (D.N.J. 2018) ("[T]he

finding that Plaintiff retained the RFC to perform one job that exists in significant numbers in the national economy met the ALJ's burden at step five to show that Plaintiff is not disabled.").

To meet her burden, it is common practice for the ALJ to rely upon the testimony of a VE. *See Zirnsak*, 777 at 616–17 (citing 20 C.F.R. 404.1566(e)). When there are discrepancies between the VE's testimony and other sources of information relied upon by the Commissioner, such as the DOT, the ALJ should elicit a reasonable explanation from the VE and explain in the ALJ's decision how the conflict was resolved. *Id.* at 617 (citing *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002)). If the ALJ fails to comply with these requirements but there is substantial evidence elsewhere in the record for the reviewing court to understand the basis supporting the result, a remand may be avoided due to harmless error. *See id.* (citing *Boone*, 353 F.3d at 209).

Here, Plaintiff's suggestion—that it was error for ALJ Pustizzi to omit any discussion of the data inconsistencies and other issues Plaintiff identified during the hearing—is well-taken. [*Emilia II*, Pl.'s Br., Docket No. 7, at 35.] ALJ Pustizzi should have addressed, on the record, (i) the apparent conflict between VE Lusk's testimony and the DOT data that was reported and (ii) whether, in ALJ Pustizzi's view, the conflict was resolved. *See Burns*, 312 F.3d at 127. However, the next question is whether ALJ Pustizzi's failure to address the issues Plaintiff raised requires reversal and a further remand.

17

It does not. Plaintiff has not provided a strong showing that reversal is required.[4] Even assuming *arguendo* that addressers no longer exist in the national economy and the remaining two jobs exist in a lower number of available positions, Plaintiff has not explained why the figures she cites as acceptable are nevertheless "insignificant" under applicable rules. Plaintiff says that supplemental sources suggest there are 547 type copy examiner jobs and 766 loader jobs available in the national economy. [*Emilia II*, Pl.'s Br., Docket No. 7, at 33, 34; *see also* R. at 1168–70.] But courts in this circuit have accepted lower figures as evidence of a sufficiently "significant" number of available jobs. *See Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) (stating that existence of 569 jobs was evidence that a significant number of other meaningful work existed in national economy); *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (stating that 200 jobs in regional economy would be sufficient). This Court finds no convincing reason to rule otherwise here.[5]

---

[4] This Court is well aware of the difficulties that using the DOT to generate accurate job availability data may present. Indeed, an ALJ's *sole* reliance on the DOT as an independently authorized source of such information may be inappropriate in certain circumstances where supplemental support is not supplied. Of course, that is not the case here.

[5] In her Reply Brief, Plaintiff attempts to distinguish these cases. "In both cases, however, the Courts were looking at regional numbers, not national numbers." [*Emilia II*, Pl.'s Reply Br., Docket No. 8, at 13.] Plaintiff misperceives the inquiry. The question is whether the ALJ has shown through substantial evidence whether there is "other work" available that a person of Plaintiff's limitations can perform. *See Zirnsak*, 666 F.3d at 616 (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560). Evidence that 200 or 569 particular jobs were available in a regional economy is a "clear indication" that other meaningful work in the national economy existed. *Ahmad*, 531 F. App'x at 278. The ALJ does not have to conclusively prove the existence of these jobs in the national economy. Evidence that has a tendency to support the proposition can be sufficient.

Therefore, because ALJ Pustizzi's decision—that Plaintiff could perform alternative jobs that existed in significant numbers—can be sustained based on the figures Plaintiff accepts as true, the Court is confident that ALJ Pustizzi's error would not result in a different outcome on remand. *See Rutherford*, 399 F.3d at 557 ("a remand is not required here because it would not affect the outcome of the case"). Accordingly, ALJ Pustizzi's failure to resolve the identified conflict is harmless. *See Zirnsak*, 777 F.3d at 617 (observing that the mere presence of an error, such as an inconsistency between a VE's testimony and DOT data, does not mandate remand so long as substantial evidence exists in the record to form an appropriate basis to support the result identified).

## V.    CONCLUSION

For the reasons expressed above, the Court will **AFFIRM** ALJ Pustizzi's decision. An accompanying Order shall issue.


10/25/2022
Date

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

19